UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Raphael Mendez,

Plaintiff,

vs.

Marty Anderson, Warden;
Haugen, Unit Manager; Lt.
Eli; Officer Tammy; and
Federal Medical Center-
Rochester, Minnesota,

Defendants.          Civ. No. 06-3307 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the parties' dispositive Motions.   The Plaintiff appears pro se, and the Defendants appear by Perry F. Sekus, Assistant United States Attorney.  For reasons which follow, we recommend that the Defendants' Motion to

Dismiss, or in the alternative, for Summary Judgment, be granted, and the Plaintiff's

Motions be denied, and that this action be dismissed.

## II.  Factual and Procedural Background

In this action, the Plaintiff, who is currently confined at the Federal Medical

Center, Rochester ("FMC-Rochester"), alleges that four (4) employees of the Federal

Bureau of Prisons ("BOP") violated his constitutional rights arising under the Fifth,

Eighth, and Thirteenth Amendments.  See, Complaint, Docket No. 1.  Specifically, the

Plaintiff alleges that the Defendant Tami Matzke ("Matzke"), who is a Senior

Correctional Officer at FMC-Rochester, scuffled the Plaintiff's legal papers, and

confiscated a variety of his personal effects -- all of which were returned to him.[1]   Id.

at p. 1. The Plaintiff further alleges that Wayne Elie ("Elie"), who is a Lieutenant at

FMC-Rochester, permitted, and sided with Matzke, in confiscating that property, and

demanded that the Plaintiff provide a receipt to prove his ownership of the glasses.

---

[1]In support of their dispositive Motion, the Defendants have identified those persons who are named in the Plaintiff's Complaint with greater specificity than provided by the allegations of that Complaint.  See, Defendants' Memorandum in Support, Docket No. 21, at pp. 2-3.  In the absence of any substantive objection from the Plaintiff, and in light of his concession that those are, indeed, the parties named in his Complaint, see, Plaintiff's Memorandum in Opposition to Dismissal, Docket No. 24, at p. 2, we shall employ those names, as provided by the Defendants, throughout the body of this Report.

The Plaintiff also alleges that the Defendant Mary Haugen ("Haugen"), who is the Plaintiff's Unit Manager at FMC-Rochester, wrongfully threatened him with punishment if he refused to work.  Id. at p. 2.  The Plaintiff also asserts that the Defendant Marty Anderson ("Anderson"), who is the Warden at FMC-Rochester, is responsible for "employing the above people at his facility," and accordingly, that it is his responsibility to ensure that the policies enacted by the BOP are followed.  Id. The Plaintiff's seeks relief, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and Title 28 U.S.C. §1331.

By way of additional background, the Plaintiff is currently incarcerated, pursuant to a civil commitment under Title 18 U.S.C. §4246, by Order of the United States District Court for the Eastern District of North Carolina.  See, Declaration of Ann Norenberg ("Norenberg Dec."), Docket No. 21-3, at ¶3; Att. A.  On July 28, 2006, the Plaintiff submitted an Inmate Request to Staff, which reflected that he wanted to end his work assignment in the Food Service Department, and that, if he were not permitted to do so, he would construe that denial as forcing him to work -- which, he contended, was impermissible since he considers himself to be a pretrial inmate.  Id. at ¶4; Att. B.  In response, Haugen informed the Plaintiff that, under the pertinent

- 3 -

regulations, see, <u>28 C.F.R. §551.101(a)(2)</u>, he would potentially be subject to disciplinary action if he failed to report to his work assignment.

The response from Haugen provides, in pertinent part, as follows:

> You correctly note that you are civilly committed to the custody of the Attorney General pursuant to 18 USC §4246. As a result of your commitment, you assert that you should not be required to work as you are considered a pre-trial inmate and cite 28 CFR §551.101(b) as the supporting regulation. You request that you be removed from your Food Service work assignment.
>
> 28 CFR 551.101(a)(2) provides that an inmate committed under 18 USC §4241(b)(d), 4242(a) or 4243(b) is considered to be a pretrial inmate. **However**, inmates committed under §4243(3), 4244, 4245, or 4246 are treated as convicted inmates. Accordingly, to the extent that you are physically and mentally able to perform an institution work assignment, you are required to do so. Your failure to report to your work assignment as required may result in disciplinary action. You should also be aware that this issue has been litigated in the District of Minnesota with a decision adverse to the inmate being issued. The decision of the District Court was appealed by the inmate to the 8th Circuit Court of Appeals which resulted in the District Court's decision being affirmed. See, <u>Harley Ferch v. Federal Medical Center, et al.</u>, Civ No. 00-2300.

<u>Norenberg Dec.</u>, Att. B, at p. 2 [emphasis in original].

On August 25, 2006, the Plaintiff submitted an additional Inmate Request to Staff Form, and requested a job change from the kitchen. <u>Norenberg Dec.</u>, at ¶5.

- 4 -

In response, Haugen advised the Plaintiff that he needed to be released, by his supervisor, from his current work assignment, acquire a signature from another staff member, who was willing to employ the Plaintiff, and provide that information to his counselor. Id. An additional request was submitted by the Plaintiff on October 23, 2006. The Plaintiff was never disciplined for failing to report to work, and he continued working in the Food Service Department until a position opened up in the Medical Records Department. Haugen recommended the Plaintiff for the open position, and he acquired that position, and has encountered no difficulties, or discipline, resulting from his employment, and states that he was compensated for the time he spent working. See, Declaration of Mary Haugen ("Haugen Decl."), Docket No. 21-6, at ¶¶3-5; Att. A.

On August 9, 2006 -- five (5) days prior to the filing of the Plaintiff's Complaint -- Matzke confiscated a pair of sunglasses during a routine search of the Plaintiff's assigned cell, as she was concerned that the style of sunglasses was unavailable at the facility's commissary, and that they were contraband, as the Plaintiff was only allowed one (1) pair of sunglasses. She completed a confiscation form, which the Plaintiff signed. Upon the Plaintiff's request for the return of the sunglasses, he was informed, by Elie, that he would need to provide some documentation providing proof of

ownership of the sunglasses, as acknowledged by confiscation form that the Plaintiff signed.  See, Norenberg Decl.,at ¶8; Att. C.

Matzke denies that she "scuffled" the Plaintiff's legal papers, and contends that she did not confiscate any other property, and is unaware of what ultimately happened to the Plaintiff's sunglasses, although she represents that she was told that the sunglasses were returned to the Plaintiff.  Id.  The Disposition of Contraband Form, which was purportedly signed by the Plaintiff on August 27, 2006, reports that the sunglasses were returned to the Plaintiff.  Id., Att. C.

### III.  Discussion

A.    The Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

1.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment

is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  <u>Rule 56(e), Federal Rules of Civil</u>

Procedure; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center</u>, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

2.    <u>Legal Analysis</u>.   Since they involve different considerations, we separately address the particulars of each of the Defendants' bases for Summary Judgment.

a.   <u>FMC-Rochester</u>. As a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute.  See, <u>United States Dept. of Energy v. Ohio</u>, 503 U.S. 607, 615 (1992); <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980).  "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  <u>Brown v. United States</u>, 151 F.3d 800, 803 (8th Cir. 1998), quoting <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); see also, <u>United States v. Mottaz</u>, 476 U.S. 834, 841 (1986)("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."), citing <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).

Waivers of sovereign immunity must be strictly construed in favor of the sovereign, and may not be enlarged beyond what the language of the waiver requires.  See, <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 34 (1992); see also, <u>Bowen v. City of New York</u>, 476 U.S. 467, 479 (1986); <u>Block v. North Dakota</u>, 461 U.S. 273, 287 (1983).  Thus, the doctrine of sovereign immunity holds that the United States, and its agencies and instrumentalities -- including the BOP -- are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress.  <u>Manypenny v. United States</u>, 948 F.2d 1057, 1063 (8th Cir. 1991); <u>United States v.</u>

Dalm, 494 U.S. 596, 608 (1990); United States v. Mitchell, supra at 538; Kaffenberger v. United States, 314 F.3d 944, 950 (8th Cir. 2003).

Congress has not waived the sovereign immunity of the United States Government, or its agencies, for claims that their employees have violated the Constitution. See, Bivens v. Six Unknown Named Agents, supra at 410; Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998)("It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity.").  A Federal prisoner in a BOP facility may bring a Bivens claim against an individual officer, subject to the defense of qualified immunity, but "the prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP * * * with respect to the alleged constitutional deprivation, his only remedy lies against the individual." Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); see also, Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998).

Here, the Plaintiff's Bivens claims against the BOP are barred by sovereign immunity.  Further, to the extent that the Plaintiff sues the individual Federal Defendants in their official capacities, the United States is the real party in interest, and sovereign immunity bars those claims.  See, Kentucky v. Graham, 473 U.S. 159, 166 (1985)(suits against public officials acting in their official capacities should be treated

- 10 -

as suits against the public entity); Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)("A suit against a public officer in his official capacity is actually a suit against the entity for which the official is an agent.").  Therefore, the Plaintiff's Bivens claims against the BOP, and the individual Federal Defendants in their official capacities, should be dismissed for lack of subject matter jurisdiction.

b.  Anderson.  Given the Record before us, the claims against Anderson are wholly without merit, for the doctrine of respondeat superior is not applicable to Bivens-type actions, and the mere act of occupying a supervisory position is an insufficient basis upon which to impose vicarious liability.  See, Schutterle v. United States, 74 F.3d 846, 848 (8th Cir. 1996); Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987), cert. denied, 484 U.S. 1014 (1988); Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983).  As a consequence, for the Plaintiff to succeed in his claims against Anderson, he must establish that Anderson personally participated in the alleged violations of the Plaintiff's constitutional rights, as they are alleged in his Complaint.  See, Tallman v. Reagan, 846 F.2d 494, 496 (8th Cir. 1988); Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985); Laswell v. Brown, supra.

- 11 -

Here, the claims against Anderson are unavailing, for the Plaintiff has failed to allege any facts which would personally tie Anderson to any alleged constitutional violation. Anderson is only referenced in the Complaint, insofar as he is alleged to "employ" the other individual Defendants, and ensure that the requirements of the regulations, that are promulgated by the BOP, are followed. This reference fails to convey any intimation of Anderson's personal involvement in any of the alleged constitutional deprivations. In the absence of any showing that Anderson was personally and directly involved in any constitutional wrong that the Plaintiff seeks to vindicate, we find, as a consequence, that his claims against Anderson necessarily fail. Accordingly, we recommend that the Defendants' Motion be granted, as to Anderson.

           c.      <u>Haugen.</u> The Defendants contend that the Plaintiff has failed to assert a viable <u>Bivens</u> claim, since the BOP's regulations provide that the Plaintiff was subject to a work assignment and, in any event, Haugen's actions, in advising the Plaintiff of the consequences of failing to report to a work assignment, are covered by qualified immunity.

When qualified immunity is asserted in a <u>Bivens</u>/Section 1983 action, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *." <u>Jones v. Shields</u>, 207 F.3d 491, 494 (8th Cir. 2000),

- 12 -

quoting Wilson v. Layne, 526 U.S. 603 (1999) [citations omitted].   "Only then do we ask whether that right was clearly established at the time of the alleged violation."   Id.; see, Coonts v. Potts, 316 F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).   Here, we find no constitutional violation but, nonetheless, we proceed to address the qualified immunity question in the interests of completeness.

The Plaintiff contends that Haugen threatened him with punishment if he refused to comply with a work assignment.   As noted by Haugen, in her written response to the Plaintiff's request to leave his kitchen work assignment, the pertinent regulations provide that an inmate, who has been committed under Title 18 U.S.C. §4246, is considered to be a convicted inmate, for purposes of the BOP regulations.   See, 28 C.F.R. §551.101(a)(2)("For purposes of this rule * * * [a]n inmate committed under Title 18 U.S.C. Sections 4241(b) and (d), 4242(a), or 4243(b) is considered to be a pretrial inmate, whereas commitments under Sections 4243(e), 4244, 4245 or 4246 are treated as convicted inmates"); see also, 28 C.F.R. §545.23 ("Each sentenced inmate who is physically and mentally able is to be assigned to an institutional, industrial, or commissary work program," and "[e]xception shall be made to allow for inmate participation in an education, vocational, or drug abuse treatment program, on either

- 13 -

a full or part-time basis, where this involvement is mandated by Bureau policy or statute.").

Furthermore, as provided in the case citation provided to the Plaintiff in Haugen's response to his request to end his kitchen assignment, as well as in the Defendants' Motion papers, at least one Court in this District has found that work may be assigned to an inmate, committed pursuant to Section 4246, provided that the assignment is therapeutic, and not punitive.  See, Ferch v. Federal Medical Center, Civ. No. 00-2300 (JMR/AJB)(D. Minn.), Docket No. 42, at p. 13, reprinted in Defendants' Memorandum in Support, Docket No. 21-1.  In Ferch, the Court found no violation of the Thirteenth Amendment, to support the plaintiff's Bivens claim, as the imposed work assignment had therapeutic value; the nature of the work was neither onerous, nor burdensome; the work conditions were acceptable; and the number of hours worked by the inmate were reasonable.  Id. at pp. 13-15.

Here, as an initial matter, we find no constitutional violation arising from Haugen's conduct.  The record is uncontroverted that the Plaintiff was not actually forced to work any additional hours, nor did he receive any form of punishment from Haugen, as a result of refusing to fulfill his work obligations.[2]  Moreover, the written

---

[2]We do note that the Plaintiff, in his Motion for an Injunction, alleges that
(continued...)

- 14 -

document, which the Plaintiff contends was a "threat," was merely Haugen's response to an Inmate Request Form, which provided, in pertinent part, that the facility might seek to impose discipline should the Plaintiff fail to report to his work assignment, and appropriately cited applicable authority.  Moreover, Haugen facilitated the Plaintiff's request to be transferred to a position that the Plaintiff deemed more desirable -- namely, the Medical Records Department.

In addition, the conditions that the Court determined to pose no constitutional violation in Ferch are also present here, as to the Plaintiff's work assignment.  Donald Lewis, who is the Plaintiff's treating psychiatrist at FMC-Rochester, opines that the Plaintiff's work assignments, including both the time spent in the Food Service, and Medical Records Departments, "have significant therapeutic value for him and are essential to his ongoing treatment program."  Declaration of Donald Lewis, Docket No. 21-5, Exh. C., at ¶5.  The Record reflects that the Plaintiff worked twenty-three (23) hours a week, was paid a rate of $0.12/hour, and was permitted several breaks

---

[2](...continued)
"kitchen employee Mr. Kranz" gave the Plaintiff extra hours and duties for "reaching work late."  Plaintiff's Motion for Summary Judgment, Docket No. 15, at p. 1. However, Kranz is not a named Defendant, and the Plaintiff does not make any specific allegation that Haugen personally had a role in that disciplinary decision.

throughout his shift.   His current position consists of seventeen (17) hours of work each week, where he is paid $0.17/hour.  Lastly, his duties entailed working in the dish room, assisting in washing food service trays, as well as pushing a locket cart containing medical records between various medical stations at the facility.   See, Haugen Decl., at ¶¶1-5.

The record is bereft of any evidence that Haugen ever imposed any work assignments as punishment, on account of the Plaintiff's behavior, or that the Plaintiff refused to report to any of his designated work assignments.   Accordingly, we find no constitutional violation arising from Haugen's written response, which advised the Plaintiff that a "failure to report to [his] work assignment as required may result in disciplinary action."   Norenberg Dec., Att. B; see also,   Glick v. Lockhart, 759 F.2d 675, 676 (8th Cir. 1985)("This circuit has followed the general rule that 'compelling prison inmates to work does not contravene the thirteenth amendment.'"), citing Mosby v. Mabry, 697 F.2d 213, 215 (8th Cir. 1982); Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977)("Compelling prison inmates to work does not contravene the Thirteenth Amendment."); Jobson v. Henne, 355 F.2d 129, 132 (2nd Cir. 1966).

Further, we recognize that Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless

- 16 -

their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).  "To withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that alleged action indeed violated that right."  Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, Young v. Harrison, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken."  Wilson v. Layne, supra at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the

- 17 -

unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" <u>Bagby v. Brondhaver</u>, 98 F.3d 1096, 1098 (8th Cir. 1996).

We have already concluded that Haugen's treatment of the Plaintiff did not violate the Constitution and, even if it had, she is clearly entitled to qualified immunity, as the unlawfulness of that treatment, given her citation to the Code of Federal Regulations, as well as to applicable precedent, made any claimed violation far from apparent. See, <u>Logan v. Clarke</u>, 119 F.3d 647, 649-650 (8th Cir. 1997); <u>Camberos v. Branstad</u>, 73 F.3d 174, 177 (8th Cir. 1995); <u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir. 1996). Accordingly, Haugen's Motion to Dismiss should also be granted under the doctrine of qualified immunity.

d. <u>Matzke and Elie</u>. In addition, we find that the Plaintiff has failed to plead a viable <u>Bivens</u> claim as to Matzke, and Elie. The temporary confiscation of his sunglasses, which Matzke believed was contraband, was a reasonable restriction, based upon institutional concerns, and the Record is uncontroverted that those sunglasses were returned to him, as noted in a document signed by the Plaintiff. See, <u>Norenberg Decl.</u>, Exh. C. The Plaintiff has not advanced

- 18 -

any affirmative showing that the temporary confiscation of the sunglasses, or any other property, implicated any protected property interests.

In addition, the Supreme Court has held that an individual cannot bring a civil rights action against a government official for taking his or her property without Due Process, if there is some other meaningful post-deprivation remedy available. See, Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also, Clark v. Kansas City Missouri School Dist., 375 F.3d 698, 702 (8th Cir. 2004); Bausley v. Dugan, 110 Fed.Appx. 736, *1 (8th Cir. 2004)(unpublished opinion).   Since the Plaintiff is detained in an institution operated by the Federal Bureau of Prisons ("BOP"), he could seek relief for any current property deprivation claims under the BOP's administrative remedy procedures, which are set forth in 28 C.F.R. §§542.10-19.[3]   Thus, there is a post-deprivation remedy available to the Plaintiff.   See, Cyrus v. United States, 2007 WL 81062 at *11 (M.D. Pa., January 8, 2007)("[T]he BOP Administrative remedies provide federal inmates with an adequate postdeprivation process for the return of their lost property, whether it was deliberately thrown away or negligently lost.").

_____

[3]Even though the Plaintiff is, apparently, currently committed to FMC-Rochester, he is plainly an inmate at a BOP facility, and therefore, the BOP administrative remedy procedures are available to him.   See, 28 C.F.R. §542.10(b) ("This program applies to **all inmates** in institutions operated by the Bureau of Prisons").

Moreover, given the belief that the Plaintiff's possession of a second pair of sunglasses was prohibited as contraband, we find that the temporary confiscation was reasonable. "Though prisoners and others who are detained retain some Fourth Amendment rights, searches and seizures are unconstitutional only to the extent they are unreasonable." Ivey v. Mooney, 2006 WL 618110, at *5 (D. Minn., March 9, 2006), citing Bell v. Wolfish, 441 U.S. 520, 558 (1979); see, Hudson v. Palmer, supra at 533 (finding no Fourth Amendment violation for confiscation of materials from a prisoner's cell); Bausley v. Dugan, 110 Fed.Appx. 736 (8th Cir., October 13, 2004) (dismissing a Section 1983 claim, brought pursuant to the Fourth and Fourteenth Amendments, against jail personnel who had allegedly confiscated a prisoner's materials).

Since the BOP's administrative remedy procedures provide the Plaintiff with an adequate post-deprivation remedy, he cannot bring a Bivens claim based upon the alleged deprivation of his sunglasses, or any other of his personal effects, as to either Matzke or Elie, and we recommend that the Defendants' Motion to Dismiss be granted.[4]

---

[4]In passing, we note that the Plaintiff, in his opposition papers, repeatedly
(continued...)

B.    <u>The Plaintiff's Motion for an Injunction</u>.

The Plaintiff also seeks injunctive relief against the Defendants who, allegedly, are acting "through kitchen employee Mr. Kranz" to force him to work additional hours of "kitchen duties" without pay, on account of his arriving late to work on one occasion.  See, <u>Plaintiff's Motion for an Injunction</u>, <u>Docket No. 15.</u>, at p. 1.  However, the Record is uncontroverted that the Plaintiff has never been

---

<sup>4</sup>(...continued)
challenges his continued commitment, pursuant to Title 18 U.S.C. §4246.  However, we cannot provide the Plaintiff with any relief, as to this request, as any challenge to the legality of his commitment is entrusted to the United States District Court for the Eastern District of North Carolina, which ordered that commitment.  See, <u>Title 18 U.S.C. §4247(h)</u>("[C]ounsel for the [civilly committed] person or his legal guardian may, at any time during such person's commitment, file **with the court that ordered the commitment** a motion for a hearing to determine whether the person should be discharged from such facility * * *.").

Indeed, in <u>United States v. Mendez</u>, 2007 WL 2031449 (4th Cir., July 16, 2007), the Court of Appeals for the Fourth Circuit found the Plaintiff's "repeated efforts to have the venue [of his commitment proceedings] moved to the Virgin Islands" to be a frivolous argument, as do we.  Moreover, in that same opinion, the Court of Appeals affirmed the recent decision of the District Court for the Eastern District of North Carolina, which continued the Plaintiff's commitment pursuant to Title 18 U.S.C. §4246, since even the Plaintiff's "independent clinical and forensic psychologist agreed with the risk assessment prepared by the medical professionals at FMC Rochester."  <u>Id.</u>  Accordingly, we find neither a legal, or factual basis to intrude upon the proper adjudications of the District Court for the Eastern District of North Carolina, especially when those adjudications have been affirmed by a Court of competent jurisdiction.

- 21 -

disciplined for refusing to go to work, that he has received pay for his labor, and that he no longer works in the Food Services Department.  See, <u>Haugen Dec.</u>, Att. A; <u>Norenberg Dec.</u>, at ¶¶5-6; Att. B. Accordingly, as he is no longer employed in the Food Services Department, we deny, as moot, his Motion for an Injunction, which would prevent the Defendants from forcing him to assume extra kitchen duties without compensation.

NOW, THEREFORE, It is  --

RECOMMENDED:

1.     That the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [Docket No. 20] be granted.

2.     That the Plaintiff's Motion for a Preliminary Injunction [Docket No. 15] be denied, as moot.

3.     That the Plaintiff's Motion for Summary Judgment [Docket No. 16] be denied.

Dated:  August 14, 2007                    s/Raymond  L. Erickson

                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 31, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 31, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.